UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

| | |
|---|---|
| DARIYA KARELINA | Civil Action No. |
| Plaintiff, | |
| V. | **COMPLAINT**<br>**Plaintiff Demands**<br>**Jury Trial** |
| EQUINOX HOLDINGS, INC.,<br>EQUINOX 63RD STREET, INC.,<br>EQUINOX HOLDINGS LLC., and<br>GARY PETERS, individually | |
| Defendants | |

-------------------------------------------------------------------

Plaintiff, DARIA KARELINA (hereinafter referred to as "Plaintiff" and/or "RIVERA"), by and through her attorneys, the DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants EQUINOX HOLDINGS, INC., EQUINOX 63RD STREET, INC., EQUINOX HOLDINGS LLC., and GARY PETERS, individually, upon information and belief, as follows:

**JURISDICTION AND VENUE**

1.Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), to remedy violations of the laws of the State of New York, and to remedy violations of the New York City Human Rights Law Administrative Code based upon diversity and the supplemental jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated against, retaliated against, and unlawfully terminated by her former employer on the basis of gender/sexually

harassment.

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

3. This action is properly brought in Federal Court in that it involves a question of federal law, Title VII of the Civil Rights Act of 1964.

4. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Southern District of New York under 28 U.S.C. 1391 (b) (1)-(2) because a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located and because a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Here, Defendants' AT&T operates a store and does business within the Southern District at 3 Time Square, New York, New York 10036, where the events pertaining to this action occurred.

## PROCEDURAL HISTORY

6. On or about October 10, 2016 Plaintiff filed a charge with the EEOC alleging gender discrimination, sexual harassment, retaliation, and unlawful termination as set forth herein.

7. On or about September 29, 2016 the EEOC issued Plaintiff a Right to Sue Letter.

8. This action was commenced within 90 days of receipt of that Right to Sue Letter.

9. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety

(90) days of receiving the Right to Sue Letter.

## PARTIES

10. Plaintiff DARIYA KARELINA (hereinafter referred to as "Plaintiff" and/or "KARELINA") is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of gender discrimination, together with hostile work environment, retaliation and unlawful termination.

11. Plaintiff is an individual woman who is a resident of the State of New York and the County of Kings.

12. At all times material, Defendant EQUINOX HOLDINGS, INC. is a domestic business corporation that does business in the State of New York.

13. At all times material, Defendant EQUINOX HOLDINGS LLC was and is a domestic limited liability company authorized to conduct business within the State of New York.

14. At all times material, Defendant EQUINOX 63RD STREET INC., was and is a domestic business corporation authorized to do business in the State of New York.

15. All of the above corporate and company Defendants operate with a Principal Place of Business located at 895 Broadway, New York, New York 10003.

16. All Defendants are collectively referred to herein as "EQUINOX."

17. At all times material, Marcus MITCHELL (hereinafter referred to as "MITCHELL") was and is the Personal Fitness Manager for EQUINOX.

18. At all times material, MITCHELL had supervisory authority over Plaintiff with regard to her employment.

19. At all times material, LISA HARRIS (hereinafter referred to as "HARRIS") was and is a Personal Training Manager/Supervisor for EQUINOX.

20. At all times material, HARRIS had supervisory authority over Plaintiff with regard to her employment.

21. At all times material, GARY PETERS (hereinafter referred to as "PETERS") was and is a Personal Trainer for EQUINOX.

## RELEVANT FACTS

22. In or around August 2014, Plaintiff immigrated to United States from Russia. Plaintiff did not know anyone in the United States prior to her move and spoke very little English upon her arrival. Plaintiff only recently became semi-fluent in conversational English.

23. Plaintiff's unfamiliarity with local rules, norms, and customs, coupled with her ignorance of prevailing societal and legal paradigms made Plaintiff a prime target for charlatans and sexual predators.

24. In or around December 1st, 2015, Plaintiff began working for Defendants as a personal trainer at the EQUINOX gym located at 330 East 61st, New York, New York 10065.

25. In or around February of 2015, Defendant's manager PETERS invited Plaintiff out to dinner after work. Plaintiff, having only been residing in the United States for a few months, did not know many people, and accepted PETERS' offer.

26. Following dinner, Plaintiff and PETERS went back to Plaintiff's apartment. The two kissed for a few minutes before PETERS suggested that they have sex. Although Plaintiff consented to engage in sexual relations with PETERS, she made it abundantly clear to

PETERS that that any prospective sexual activity was contingent on PETERS wearing a condom. Plaintiff emphatically and incontrovertibly made this clear to PETERS because Plaintiff was not on birth control.

27. PETERS unambiguously affirmed that he understood that he must wear a condom before engaging in any sexual activity, and clearly confirmed that he would wear a condom. PETERS then proceeded to produce a new condom from his pocket, which he showed to Plaintiff before placing the prophylactic on his penis.

28. Plaintiff and PETERS then engaged in consensual coitus. Immediately following intercourse, Plaintiff retreated to the restroom.

29. To her utter dismay, Plaintiff then realized that PETERS had not worn a condom, and that PETERS had in fact ejaculated inside of Plaintiff. Plaintiff was furious, but realized that such an occurrence may have been accidental.

30. However, Plaintiff soon learned that PETERS intentionally deceived Plaintiff. PETERS' never intended to use protection, and knowingly and deceptively removed the condom immediately before penetrating Plaintiff without her knowledge.

31. Upon exiting the restroom, Plaintiff confirmed PETER'S sexual fabrication as she observed him holding the opened, unfurled condom and filling it with her hand cream in a crude attempt to fool Plaintiff into thinking he had used the condom during intercourse.

32. Mortified by his betrayal, Plaintiff confronted PETERS on his horrific ruse and reiterated that her consent to intercourse was entirely dependent upon PETERS' use of protection and that Plaintiff never consented to engage in unprotected intercourse with PETERS.

33. PETERS initially denied the obvious truth of his attempted deception before coming clean and apologizing for his disgracefully contemptible behavior.

34. Plaintiff demanded that PETERS leave her apartment immediately.

35. Following PETERS' reprehensible actions, Plaintiff avoided PETERS as much as possible. However, a few weeks after her encounter with PETERS, Plaintiff learned that she was pregnant. Plaintiff's pregnancy was a direct and otherwise foreseeable result of PETERS' intentionally treacherous removal of his condom prior to having intercourse with Plaintiff.

36. Plaintiff's unplanned pregnancy left her devastated, scared, overwhelmed, and utterly alone. Not knowing what to do or where to turn, Plaintiff informed PETERS of her pregnancy.

37. Upon learning of Plaintiff's pregnancy, PETERS sobbed and begged her to give him another chance. A few days later, PETERS showed up at Plaintiff's door uninvited at 2:00 AM and incessantly knocked on her door until she allowed him inside where he proceeded to beg Plaintiff to take him back.

38. Desperate, vulnerable, and alone, Plaintiff reluctantly agreed to begin dating PETERS again. Despite their reconciliation, Plaintiff did not know what to do about her pregnancy. After weeks of agonizing internal deliberations, Plaintiff eventually made the harrowing and life-altering decision to undergo an abortion procedure.

39. Plaintiff began suffering from severe depression and anxiety. In her downtrodden mental and physical state, Plaintiff and PETERS resumed their relationship.

40. A few weeks later, PETERS began to abuse Plaintiff in a variety of cruel and heinous

ways, which sometimes escalating to physical violence against Plaintiff.

41. For example, PETERS copied Plaintiff's apartment key without permission and began showing up at her door uninvited at all hours of the night and forcing his way into her apartment despite her protestations.

42. The severity of her situation finally crystalized for Plaintiff after PETERS physically attacked Plaintiff in her apartment because she refused to capitulate to his demands for sexual gratification.

43. In short, Plaintiff and PETERS were spending the night at Plaintiff's apartment. Plaintiff was tired and uninterested in engaging in any romanticor sexual conduct.

44. However, after Plaintiff rebuffed his advances, PETERS became enraged. He wrapped his hand around Plaintiff's throat and squeezed, choking Plaintiff with such force that she very nearly lost consciousness. Plaintiff fought back, kicking, scratching, and punching, and eventually escaped PETERS' physical onslaught.

45. The grisly episode took a harsh physical toll on Plaintiff, leaving her visibly bruised and scratched, but the psychological effects of PETERS' attack were even more sever and long-lasting.

46. Immediately after expelling PETERS from her apartment, Plaintiff began suffering from sudden and severe panic attacks for the first time in her life

47. Soon after her symptoms emerged, Plaintiff was approached by Marcus, one of the Personal Training Managers at EQUINOX, who told Plaintiff that PETERS was overtly abusive toward Plaintiff, even in the workplace, and further relayed that he and the EQUINOX staff were extremely concerned for her wellbeing

48. Plaintiff realized that PETERS' unlawful harassment and abuse was never going to stop if she continued to see him at work.

49. In or around May 2016, Plaintiff finally summoned the strength to end her abusive relationship with PETERS.

50. On or about May 19th, 2016, Plaintiff's psychotherapist diagnosed her with depression, anxiety, and post-traumatic stress syndrome. Her doctor explained that it was essential to Plaintiff's mental and physical health that she remove PETERS from her life in every way possible.

51. Following her doctor's orders, Plaintiff emailed Defendants' Supervisor/Employee HARRIS regarding the mental and physical abuse she endured at the hands of PETERS, and inquired about the possibility of transferring to another EQUINOX location.

52. Plaintiff then detailed the specifics of PETERS' abusive behavior to Defendants' Manager MITCHELL.

53. On or about May 20th 2016, Defendants told the Plaintiff that she would be transferred to Defendants East 61st Street EQUINOX location.

54. On or about May 23rd, 2016 Plaintiff contacted Defendants' Human Resources Director MATTHEW HERBERT and Defendants' legal counsel PATRICIA WENCELBLAT regarding PETERS' despicable behavior, detailing how Defendants' Manager PETERS strangled and choked her. Plaintiff also disclosed the severe post-traumatic stress and panic attacks she began suffering due directly to seeing PETERS at work. Plaintiff also requested a reasonable accommodation on account of the abuse she suffered on account of PETERS.

55. To her great dismay, Plaintiff received no response from Defendants' HERBERT or WENCELBLAT.

56. The next day, May 24th, Plaintiff finally met with Defendants' Managers REBECCA GRANDE and STEVEN BRAUT and Defendants' Regional Manager JOSHUA HARRISON.

57. Plaintiff was under the impression that the purpose of the meeting was to speak about transitioning gyms. Instead, Plaintiff was presented with a write-up due to the work she missed as a result of her panic attacks and post-traumatic stress.

58. The write-up was to act as her final warning. Defendants told Plaintiff that the next infraction would lead to her termination.

59. After being blindsided by Defendants' Managers, Plaintiff broke down crying in the office. Plaintiff was upset that Defendants chose to ignore her pleas for a simple and reasonable accommodation did absolutely nothing to help aid her post-traumatic stress, but instead exacerbated her stress by negligently and erroneously giving Plaintiff a baseless "final warning" so as to constitute a "legitimate non-discriminatory" reason for terminating the Plaintiff.

60. On or about May 25th, 2016, Plaintiff sent an email to Defendants' Human Resources Director MATTHEW HERBERT. HERBERT to schedule an appointment to speak face-to-face. During the meeting, Plaintiff was ordered to send screen shots of conversations with Defendants' Manager PETERS, as well as information about PETERS.

61. On or about June 4th, 2016 the Plaintiff contacted another of Defendants' Human Resource Directors, MO LOWINSKI. Plaintiff confided in Defendants' Supervisor LOWINSKI, and told LOWINSKI about the sexual abuse she endured at the hands of

Defendants' Manager PETERS. LOWINSKI did not investigate or attempt to make Plaintiff's work environment bearable, instead, LOWINSKI encouraged Plaintiff to "take screen shots" and offered to edit language of Plaintiff's final warning.

62. In or around June 2016, the Plaintiff was transferred from the East 63rd Street gym, to the East 61st Street gym.

63. The Plaintiff was transferred to a gym where the management there had told her it was hard to generate clientele. Not only did management at the new location acknowledge that it was near to impossible to generate new business, but the Defendants' further retaliated against the Plaintiff by taking away her clientele.

64. Many of the Plaintiffs former clients chose to stay at the East 63rd location, instead of following Plaintiff to East 61st. Thus, Plaintiff lost clientele.

65. Defendants' Supervisor MITCHELL prohibited the Plaintiff to reach out and address her clients before the official transfer. As a result of Defendants' retaliation against the Plaintiff, the Plaintiff was unable to generate steady business after starting work at the new location. Plaintiff's clients were essentially taken away from her after she had built a good reputation at the 63rd location.

66. Defendants, in retaliation against Plaintiff for complaining about Defendants' Manager PETERS' sexual harassment directed toward her, upon transferring, demoted Plaintiff from a Tier 3 Trainer to Tier 1 Trainer. This demotion materially affected Plaintiff's terms and conditions of employment: Plaintiff would now be an unpaid worker that would have to prove herself to the management at Defendants' 61st gym. All of Plaintiff's prior experience as a Tier 3 Trainer was disregarded by Defendants.

67. Due to Defendants' inadequate and inappropriate response to Plaintiff's severe emotion distress, the Defendants forced the Plaintiff from her job and Plaintiff was constructively terminated on or about September 23, 2016.

68. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

69. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

70. The above are just some of the examples of unlawful and discriminatory conduct to which Defendant subjected Plaintiff.

**AS AND FOR A FIRST CAUSE OF ACTION
DISCRIMINATION UNDER TITLE VII
(Not Against Individual Defendants)**

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. Title VII states in relevant part as follows:

(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

73. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

74. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

77. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

**(Not Against Individual Defendants)**

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

80. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
**(Not Against Individual Defendants)**

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

83. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(As Against Individual Defendants)

84. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

86. Defendants violated the section cited herein as set forth.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(As Against Individual Defendants)

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

88. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

89. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION

## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

90. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
    (1) the employee or agent exercised managerial or supervisory responsibility; or

    (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

    (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

92. Defendants violated the section cited herein as set forth.

### AS AN EIGHTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

93. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

94. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

95. Plaintiff hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A NINTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

98. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A TENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

101. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorney's fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

Dated: New York, New York
       December 30, 2017

                                              DEREK SMITH LAW GROUP, PLLC
                                              Attorneys for Plaintiff

                                              By: _____/s/_____
                                                    Paul Liggieri Esq.
                                                    1 Penn Plaza, Suite 4905
                                                    New York, New York 10119
                                                    (212) 587-0760